UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
Central Division

|  |  |  |
|---|---|---|
| SCOTT HAENISCH, | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. |
| v. | ) | |
| | ) | |
| UTZ QUALITY FOODS, INC., | ) | |
| | ) | |
| Defendant | ) | |

# VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

## Introductory Statement

This is an action for unpaid wages and other damages arising from the Defendant's employment of the Plaintiff, whom they have misclassified as an independent contractor in violation of Massachusetts law as part of their distribution system supplying their customers in Massachusetts with snack foods produced in other states. The Defendant's distribution system required the Plaintiff to borrow a substantial amount of money in order to enter into a purported "purchase" of the distribution rights to certain of the Defendant's customer stores in Massachusetts. Both by the terms of its written agreements with the Plaintiff and by the practical realities of the distribution system, the Defendant exercises such direction and control over the Plaintiff that he lacks the independence required to qualify as an independent contractor for purposes of Massachusetts law. Nor does the arrangement leave the Plaintiff with sufficient time to operate an independent business, even if he wished to. The distribution system, and the personal financial commitments required to enter into it, gave the Defendant such powerful leverage over the Plaintiff that he was entirely its employee as a matter of fact and law.

**Parties, Jurisdiction and Venue**

1. Plaintiff Scott Haenisch ("Mr. Haenisch") is an individual residing in Ashburnham, Massachusetts.

2. Defendant Utz Brands, Inc. ("Utz") is a publicly traded corporation with a principal business address of 900 High Street, Hanover, PA 17331 and a local registered agent address of 44 School Street, Suite 505, Boston, MA 02108.

3. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332, and can assert personal jurisdiction over Utz consistent with M.G.L. c. 223A § 3 and the Due Process clause of the U.S. Constitution.

4. Venue is appropriate pursuant to 28 U.S.C.A. § 1391 because a substantial part of the events giving rise to the claims herein occurred in Massachusetts, and under choice of law principles Massachusetts law applies to the claims at issue in this case.

**Facts**

*The Utz Distribution System Generally*

5. Utz is a publicly traded corporation that "manufactures a diverse portfolio of savory snacks through popular brands, including Utz®, ON THE BORDER® Chips & Dips, Golden Flake®, Zapp's®, Boulder Canyon®, Hawaiian Brand®, and TORTIYAHS!®, among others."[1]

6. Utz distributes its snack products nationally through a variety of different methods, including a direct-store-delivery system employing so-called "independent operators" or "independent distributors" who delivery its products and stock shelves at its customer stores along specific routes.

---

[1] Corporate Overview, available at Utz Brands, Inc. - Investor Relations (utzsnacks.com).

7.      Utz wholly owns and operates Utz Quality Foods, LLC, a subsidiary corporation used by the parent company to manage and operate its direct-store-delivery system.

8.      Utz operates hundreds of routes throughout the United States, including many in Massachusetts.

9.      Utz' routes are generally operated by "independent operators" whom Utz classifies as independent contractors and who enter into contracts with Utz whereby they purport to purchase routes from the company in exchange for the privileges and responsibilities associated with delivering Utz' products to Utz' customer stores along those routes.

10.     Utz also employs individuals classified as W-2 employees who perform a variety of services, including filling in for "independent operators," as directed by the company.

11.     Regardless of classification, the individuals performing the delivery work for Utz perform the same job responsibilities in substantially the same manner.

### *Utz' Employment of Mr. Haenisch*

12.     Mr. Haenisch established Forge Distribution, Inc. ("Forge Distribution"), a Massachusetts corporation, on or about May 20, 2022, for the sole purpose of complying with Utz' insistence that he could only work for them if he established an independent business.

13.     Shortly after that, Mr. Haenisch entered into a series of agreements that Utz required him to sign in exchange for the right to work for the company.

14.     On or about July 4, 2022, Mr. Haenisch signed a "Closing Fees Statement" in connection with his purchase from "Sibley Distribution, LLC/Amanda Fitzgerald" of Route 7084, previously identified as Route 6830, which identified the buyer as "Forge Distribution Inc/Scott Haenisch."

15.     The purchase price for Route 7084 was $150,000, of which $37,164.07 was paid to the seller and the remainder was paid to Banc of America Leasing & Capital, LLC ("BALCAP").

16.     Mr. Haenisch paid $30,000 in cash for his purchase of Route 7084 and financed the remaining $120,000 through BALCAP with a ten-year loan at 8.21% interest.

17.     As part of his loan transaction with BALCAP, Mr. Haenisch executed a promissory note, financing security agreement, disbursement authorization, and personal guaranty.

18.     Mr. Haenisch's Promissory Note with Banc of America explicitly identifies Utz' termination of the Independent Distributor Agreement as an instance of default for purposes of the note.

19.     Contemporaneously with his purchase of Route 7084, Mr. Haenisch signed an "Independent Distributor Agreement" (hereafter "Distributor Agreement") between Forge Distribution and Utz.

20.     The Distributor Agreement requires that Forge Distribution, identified as the "Independent Distributor," provide "independent sales and related direct store door services ('Services') directly to Customers, using the Independent Distributor's expertise and skills," and agree "to provide such Services in accordance with industry standards (as defined in Exhibit A), consistent with any applicable codes of conduct, rules, laws, or standards issued by any applicable governmental authority and in conformity with any reasonable requirements of UTZ's Customers."

21.     Although the Distributor Agreement purports to be a contract between two corporate entities, both its terms and the actual conditions of work required to fulfill those terms

4

render Mr. Haenisch personally responsible for doing the delivery work for which the direct store delivery system exists.

22. Mr. Haenisch, not the corporate entity Utz required him to establish, possesses the "expertise and skill" required to deliver Utz' products to its customer stores.

23. As a matter of economic necessity, Mr. Haenisch personally drove the truck with which he delivered Utz' products to its customer stores; personally stocked those products on the shelves of the customer stores; and personally performed all the work necessary to deliver Utz' products to its customer stores along "his" route.

24. Mr. Haenisch spent an average of 50-60 hours per week driving Utz' products to its customer stores, loading and unloading the products, stocking the products, and performing other related responsibilities.

25. The majority of Mr. Haenisch's time spent each week performing services for Utz was spent driving the products to the customer stores.

26. Notwithstanding the Distributor Agreement's premise that Mr. Haenisch enjoyed independence in making decisions to purchase Utz' products for distribution, in practice Mr. Haenisch was essentially forced to "purchase" the products directed by Utz, at prices determined by Utz, with very little ability to negotiate.

27. Notwithstanding the Distributor Agreement's provision that Mr. Haenisch was free to determine "the order and sequence" in which he performed his services, in practice Mr. Haenisch was required to meet the demands of Utz' customer stores and did not have any control over how or when he provided his services.

28. Notwithstanding the Distributor Agreement's provision that Mr. Haenisch was not subject to Utz' supervision or direction, in practice Utz controlled Mr. Haenisch's services

5

through its control over its relationships with its customers and its control over the timing of its products' deliveries.

29. Notwithstanding the Distributor Agreement's provision that Mr. Haenisch was free to provide other services to other entities, in practice Mr. Haenisch lacked the time or income that would have allowed him to do so as a result of his commitments to servicing the Utz routes on which he delivered Utz' products.

30. Notwithstanding the Distributor Agreement's claim that Mr. Haenisch was not required to submit any written or oral reports to it, in both practice and by the express terms of Exhibit C to the Distributor Agreement Mr. Haenisch was in fact required to remit to Utz information required to "settle accounts" with Utz on a weekly basis, "in any manner or form Utz chooses."

31. Even the Distributor Agreement's express terms restrict Mr. Haenisch's independence and subject him to Utz' direction and control, in at least the following ways:

   a. By requiring Mr. Haenisch to provide his services according to "industry standards," defined by "the industry," which in practice means Utz and its competitors, as well as the requirements of Utz' customers, which were subject to negotiation only between Utz and its customers;

   b. By reserving to Utz the ability to add or subtract customer stores from his route unilaterally;

   c. By granting Utz control over the products it provided to Mr. Haenisch for distribution, and requiring him to bear the risk of loss solely;

   d. By reserving to Utz the right to negotiate with certain customer stores over the price paid for products;

6

 e. By entitling Utz to negotiate and pay for "fees or charges" imposed by Utz' customer stores, including "slotting fees, stocking fees, pay-to-stay charges, payments for shelf space, racks, promotional allowances, discounts and rebates," for which Mr. Haenisch was then required to partially reimburse Utz; and

 f. By granting Utz broad power to terminate Mr. Haenisch's right to distribute along his route.

32. On or about June 12, 2023, Mr. Haenisch signed a purported bill of sale whereby a seller identified as "Carmen Pozo-Rivera/Pozo & Sons LLC" conveyed to "Scott Haenisch/Forge Distribution Inc" a "Distributorship," defined as "the Distribution Rights to distribute Products to Outlets on a Direct Store Delivery basis in the Primary Area of Responsibility, pursuant to a Distributor's Agreement which is incorporated by reference between Buyer and Seller."

33. The consideration identified in the bill of sale was "zero dollars and 00/100 ($0.00/100) lawful money of the United States of America and for other good and valuable consideration."

34. The bill of sale identified "Stops" along the route, identified as Route 8242, nine specific stores for which Mr. Haenisch was to acquire the responsibility to delivery Utz' products.

35. The assumption of this additional responsibility required Mr. Haenisch to work an average of an additional 20 hours of work each week delivering, loading, unloading and stocking Utz' products to their customer stores.

***Utz' Failure to Pay Earned Wages and Withholding of Earned Wages***

36. In accordance with Utz' direct-store-delivery arrangement, and consistent with its classification of Mr. Haenisch as an independent contractor, Utz failed to pay Mr. Haenisch fully for his hours worked and in some instances failed to pay him the Massachusetts minimum wage for hours worked.

37. In accordance with Utz' direct-store-delivery arrangement, and consistent with its classification of Mr. Haenisch as an independent contractor, Utz withheld earned wages from Mr. Haenisch's pay by deducting the amount of itemized business expenses from his settlement statements.

*Utz' Retaliatory Termination of Mr. Haenisch*

38. During the month of July 2024, Mr. Haenisch noticed that another person was interfering with his work for Utz by delivering products to stores within his route that were sold to the stores for discounted prices.

39. Mr. Haenisch complained about this to Utz, but they ignored him and claimed not to have any knowledge of it.

40. Mr. Haenisch also noticed at least one incident in July or August 2024 on which his inventory was unilaterally adjusted for him without his input, and complained about this as well.

41. On or about August 10, 2024, Mr. Haenisch confronted Utz with documentary evidence of the interference with his route.

42. On August 30, 2024, Utz sent Mr. Haenisch a letter giving "formal notice of termination of your agreement and independent contractor relationship for engaging in a material breach."

43. Utz alleged that Mr. Haenisch had "falsified invoices to [his] own financial gain in several accounts," and contended that the breach was "incapable of cure."

44. The termination was sent in bad faith, the allegation made by Utz was entirely false, and any inaccuracy in the invoices in question resulted from a failure of the handheld device Utz required Mr. Haenisch to use and over which it had effective control.

45. Contemporaneously with sending its August 30, 2024 letter, through its agents Utz defamed Mr. Haenisch by falsely telling employees of its customer stores along his route that he had engaged in theft.

46. Paul Debien, one of Utz' employees tasked with performing "fill-in" services who assumed responsibility for operating Mr. Haenisch's route immediately upon the termination, told store employees that Mr. Haenisch had "stolen" from Utz.

47. Mr. Haenisch has reason to believe that Mr. Debien and other people in Utz' warehouse have been telling people that he "stole" and that they heard the allegation from Utz.

## COUNT I
## Misclassification in Violation of M.G.L. c. 149 § 148B

48. Mr. Haenisch restates the allegations in each of the foregoing paragraphs and incorporate them herein.

49. As described in the foregoing paragraphs, Utz misclassified Mr. Haenisch as an independent contractor in violation of M.G.L. c. 149 § 148B.

50. As described in the foregoing paragraphs, Mr. Haenisch incurred damages as a result of Utz' misclassification of him as an independent contractor.

51. Pursuant to M.G.L. c. 149 § 150, Mr. Haenisch is entitled to the amount of his damages, including lost wages and benefits, trebled, and is entitled to recover his reasonable attorneys' fees and litigation costs in addition to other available remedies.

**COUNT II**
**Failure to Pay Wages in Violation of M.G.L. c. 149 § 148**

52. Mr. Haenisch restates the allegations in each of the foregoing paragraphs and incorporate them herein.

53. As described in the foregoing paragraphs, Utz misclassified Mr. Haenisch as an independent contractor in violation of M.G.L. c. 149 § 148B.

54. As described in the foregoing paragraphs, Utz failed to pay Mr. Haenisch earned wages and withheld wages earned by him in violation of M.G.L. c. 149 § 148.

55. Pursuant to M.G.L. c. 149 § 150, Mr. Haenisch is entitled to the amount of his damages, including lost wages and benefits, trebled, and is entitled to recover his reasonable attorneys' fees and litigation costs in addition to other available remedies.

**COUNT III**
**Failure to Pay Minimum Wages in Violation of M.G.L. c. 151 § 1**

56. Mr. Haenisch restates the allegations in each of the foregoing paragraphs and incorporates them herein.

57. As described in the foregoing paragraphs, Utz employed Mr. Haenisch at an "oppressive and unreasonable wage" as defined by M.G.L. c. 151 § 2.

58. As described in the foregoing paragraphs, in certain instances Utz failed to pay Mr. Haenisch the Massachusetts minimum wage in violation of M.G.L. c. 151 § 1.

59. Pursuant to M.G.L. c. 151 § 20, Mr. Haenisch is entitled to the amount of his damages as a result of the Defendants' improper deductions, trebled, and is entitled to recover his reasonable attorneys' fees and litigation costs in addition to other available remedies.

**COUNT IV**
**Retaliation in Violation of M.G.L. c. 149 § 148A**

60. Mr. Haenisch restates the allegations in each of the foregoing paragraphs and incorporates them herein.

61. As described in the foregoing paragraphs, Utz retaliated against Mr. Haenisch for his complaints about interference with his ability to earn wages.

62. Utz' termination of Mr. Haenisch's employment violated M.G.L. c. 149 § 148A.

63. Pursuant to M.G.L. c. 149 § 150, Mr. Haenisch is entitled to the amount of his damages as a result of the Defendants' improper deductions, trebled, and is entitled to recover his reasonable attorneys' fees and litigation costs in addition to other available remedies.

## COUNT V
## Defamation

64. Mr. Haenisch restates the allegations in each of the foregoing paragraphs and incorporates them herein.

65. As described in the foregoing paragraphs, Utz perpetrated false statements about Mr. Haenisch to the effect that he had "stolen."

66. Utz knew or should have known the statements were false.

67. Utz' termination of Mr. Haenisch's employment violated M.G.L. c. 149 § 148A.

68. Utz' statements has caused damage to Mr. Haenisch's reputation and interfered with his ability to perform his work for Utz, which Utz used as a pretext for his termination.

69. Utz is liable to Mr. Haenisch for the amount of his damages incurred as a result of its defamatory statements.

WHEREFORE, the Plaintiff respectfully asks the Court for the following relief:

a) An award to the Plaintiff of his damages, including but not limited to treble damages;

      b)   An award to the Plaintiff of his reasonable attorneys' fees and costs of litigation; and

      c)   Such other and further relief as the Court shall deem appropriate.

**THE PLAINTIFF DEMANDS A JURY TRIAL
IN THIS MATTER ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Plaintiff Scott Haenisch
By his attorneys,

*/s/ Benjamin C. Rudolf*
Benjamin C. Rudolf, BBO#667695
RUDOLF, SMITH, GRIFFIS & RUGGIERI, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
(508) 425-6330
rudolf@rudolfsmith.com

Dated: December 12, 2024

## VERIFICATION

I, Scott Haenisch, state under the pains and penalties of perjury that I am the Plaintiff in the foregoing Verified Complaint and that I have read the foregoing Verified Complaint carefully, and it is true and accurate to the best of my memory, knowledge, and belief.

/s/
Scott Haenisch         *[signature]*

Dated:    11/18/24